BECKIE ADELMAN, Respondent, *v.* UVALDE ASPHALT PAVING COMPANY, Appellant.

(Supreme Court, Appellate Term, First Department, February, 1918.)

Negligence — action for personal injuries — evidence — judgments — when motion to dismiss complaint granted.

> Where defendant, the contractor for asphalting and repaving a street, reopened a trench, left by a company which under a permit duly issued had laid electrical conduits in the street, to a depth of nine inches, put in a concrete base of about six inches and with dirt taken from the trench filled it in to the level of the surface of the street or a little above it, and about five P. M. while it was still light and raining plaintiff stepped on the dirt covering the trench, fell and was injured, and the testimony shows that plaintiff saw the dirt before the accident, a motion to dismiss her complaint in an action for personal injuries should have been granted, and a judgment in her favor will be reversed and the complaint dismissed.
>
> Mullan, J., dissents.

APPEAL by the defendant from a judgment of the Municipal Court of the city of New York, borough of Manhattan, second district, in favor of the plaintiff for the sum of $500 and $38 costs.

Amos H. Stephens (Edward A. Hayes, of counsel), for appellant.

Almy, Van Gordon, Evans & Kelly (William S. Evans, of counsel), for respondent.

WEEKS, J. Prior to the accident the Empire City Subway Company, under a permit duly issued by the proper authorities of the city of New York, laid electrical conduits in Stanton street along the northerly curb making an excavation about two feet wide. This work was finished on May 27, 1916, and the defendant then undertook the asphalting and repaving of the street. Before turning the trench over to defendant

Appellate Term, First Department, February, 1918.    [Vol. 102.

the Empire Company laid creosoted wood conduits and filled up the trench. On or about June 2, 1916, the defendant reopened the trench to a depth of about nine inches and put in a concrete base of about six inches and with the dirt taken from the trench filled in the same to the level of the surface of the street or a little above it.

On June 9, 1916, the plaintiff, who was crossing Stanton street on the westerly side of Ludlow street, stepped on the dirt covering the trench and fell, receiving the injuries for which recovery is sought in this action. The accident occurred about five o'clock in the afternoon when it was still light and, although there was evidence that it had been raining that day and was still raining a little, one of the plaintiff's witnesses testified that '' there wasn't any hole, it was covered up with dirt.''

The only description as to how the accident happened was given by the plaintiff who testified as follows:

"Q. You say you stepped on something. What did you step on? A. Before I stepped it looked to me as if it was all right. Then I stepped and my foot sunk in and I fell down. Q. Did you look at all before you stepped? A. It looked to be all right on the top. When I stepped with my foot, I sunk in. Q. What did you sink in? A. The dirt and pebbles. Q. How much dirt was there? A. It was laying around, dirt and pebbles. * * * Q. What foot did you step on the dirt with? A. The left foot. Q. And then what happened to you? A. Then I fell down on the left side. Q. What happened to your foot? A. I sunk down with my foot. Q. Did the dirt sink down under your foot? A. I sunk down on the dirt with my foot. Q. Before you came to this dirt did you notice it? A. I noticed that there was dirt around there but the place where I stepped looked to be all right.''

There is no evidence to support the theory upon which the respondent seeks to support the judgment herein, " that there was a trap there, no guard, light or other warning sign to apprise any one that the dirt was so loosely and carelessly thrown into the trench that it acted like a quicksand."

According to the testimony presented by the plaintiff there were only about three inches of dirt, it was still daylight and the plaintiff saw that the dirt was there before she stepped in it.

The case of *Johnson* v. *Friel,* 50 N. Y. 679, upon which plaintiff relied in the court below, has no application, as in that case a hole had been washed out several days before the accident, which hole was two feet deep and six or seven feet long, and no measures had been taken to fill it in or to protect the public, and the accident occurred at nine o'clock in the evening.

In the instant case the accident occurred in the daytime.

As stated in *Fitzgerald* v. *Degnon Contracting Co.,* 126 App. Div. 363: " The condition of the street was obvious, and it was for her to take care (*Whalen* v. *Citizens Gas Light Co.,* 151 N. Y. 70; *Walsh* v. *Central N. Y. Tel. & Tel. Co.,* 176 id. 163). The defendants were engaged in a necessary and lawful work and were guilty of no negligence."

The motion to dismiss at the close of the plaintiff's case should have been granted.

The judgment should be reversed, with thirty dollars costs, and the complaint dismissed, with costs in the court below.

GUY, J., concurs.

MULLAN, J. (dissenting.) I am unable to assent. It was testified to, and the jury was entitled to find, that the Empire City Subway Company had broken into an

asphalt roadway and dug a trench five or six feet deep, and about two feet wide, in which to lay telephone ducts; that after the ducts were put in the trench was back-filled with dirt, which was rammed down and left level with the surface of the asphalt of the roadway; that the work of the Empire people was completed on May twenty-seventh, when the trench was ready to receive its asphalt cover at the hands of the defendant under a contract it had with the Empire Company; that on June second the defendant opened up the trench and excavated to a depth of nine inches from the surface, replacing the earth with six inches of concrete, and over the concrete loose earth; that the process of asphalting employed by the defendant was to put in concrete and allow it to settle so that when settled its surface would be three inches from the surface of the street, and then to lay over it a binder to a depth of one inch, and then to cover the binder with asphalt to a depth of two inches; and on June ninth, when the plaintiff claims to have fallen, the finishing part of the process — laying the binder and asphalt — had not been done; and that on the day in question it had been raining. To one witness, Sherman, the "dirt was fresh, freshly dug up; * * * it looked to me loose." The witness Flam testified that the plaintiff "fell in with the leg;" that her shoe left an impression in the wet earth, "know how it is if you step in, take your foot out, remain certain marks, hole. * * * She fell inside, remained a hole." Two witnesses for the plaintiff testified that a wagon wheel had sunk in the dirt a day or two before. One of these witnesses said that push-carts had fallen in. A witness for the defendant said the earth at the top of the trench was "muddy * * * it was muddy enough so that you could see visible foot-prints there." Another witness for the defendant said it "was muddy, numerous foot-prints from people stepping in it all day long."

The foreman in charge of the trench work for the Empire Company testified that from the time of completion of his work, on May twenty-seventh, until the trench was turned over to the defendant on June second, it was his duty to, and he did, examine the trench every day to see whether the fill was "going down." It is in evidence that the scene of the accident, at the corner of Ludlow and Stanton streets, is a very busy and crowded place, where accidents frequently occur because of the crowds and consequent confusion.

It seems to me that the mere statement of this evidence shows that the case was for the jury, unless it is to be said that when holes are dug in our crowded city streets, for no matter how useful a purpose, the digger may, while his concrete is settling, or for any reason of his own, throw in a covering of loose earth that is obviously a menace alike to pedestrians and vehicular traffic. Even if the defendant could exonerate itself by showing that it had tamped the earth down, and made it as hard and solid as dirt ordinarily can be made by packing, the question would be for the jury in view of the testimony presented for the plaintiff that the earth was loose; but no such proof was offered, and the jury was amply warranted in finding that the earth was loosely thrown in, was untamped, and created a condition of danger. Nor do I see any room here for the application of the doctrine that refuses relief to a pedestrian who ignores obvious defects in the highway. This was no such obvious defect, for surely, I think, one may assume in crossing our asphalted city streets that a dirt portion of the roadway that is on a level with the asphalt is packed down, hard, solid, and safe to walk upon. The plaintiff testified that she was unfamiliar with the neighborhood. While the decisions upon the subject of street defects are none too clear, for the reason, perhaps, that because of the

infinite variety of highway obstructions and dangers each case must rest largely upon its own facts, it cannot, I think, be denied that private creators of street dangers are held to a stricter accountability than is a municipal body. It would be an intolerable burden to municipalities to be held answerable in damages for slight defects in the many miles of highways under their care (*Terry* v. *Village of Perry,* 199 N. Y. 79; *Butler* v. *Village of Oxford,* 186 id. 444), but there is no such reason for exculpating persons who, in a private capacity, have created dangerous conditions in the course of street work they are engaged in, and this without regard to the purpose of the work or the amount of benefit the general public may probably or necessarily derive from it. Even in an action against a municipality, a distinction is drawn in favor of the defendant in the case of a defect from ordinary wear, as against a defect caused by the use of temporary expedients. See *Butler* v. *Village of Oxford, supra.* The defective condition in the case at bar was clearly of a temporary character. For the reasons stated I vote to affirm.

Judgment reversed, with costs.